UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| *AMERICAN HOME ASSURANCE COMPANY,* <br> *as subrogee of FOREST RIVER, INC.,* <br><br> Plaintiffs, <br><br> v. <br><br> *MAKITA CORPORATION OF AMERICA, and* <br> *MAKITA U.S.A., INC.,* <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) Case No. 3:21-cv-00252-JD-MGG <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

### DEFENDANTS' MOTION TO STRIKE
### OPINIONS AND TESTIMONY OF MICHAEL ESKRA

COME NOW, Defendants Makita Corporation of American and Makita, U.S.A., Inc., (hereinafter collectively "Makita" or "Defendants"), by and through their counsel Stanton | Barton LLC, and pursuant to Rule 702 of the Federal Rule of Evidence and *Daubert v. Merrell Dow Pharmaceuticals*, 509 US. 579 (1993) and its progeny and, in compliance with N.D. Ind. L.R. 7-1 and this Court's Order [Doc. 68 and 75], and, for its Motion to Strike the Opinions and Testimony of Michael Eskra, hereby states as follows:

1. Plaintiff's cause of action relies on the causation opinion of Michael Eskra ("Eskra"), a retained battery expert who claims to have the ability to identify when a lithium-ion battery cell was attacked by fire or when it was the cause of the fire. (Eskra II, p. 63-64).[1] Yet, Eskra rendered his opinion after only conducting a nominal investigation into this loss. He did not visit the scene of the fire. (Eskra 1, p. 14). He did not interview any of the eyewitnesses—or anyone

---

[1] All references to exhibits herein are attached to Defendant's Brief in Support of its Motion to Strike the Opinions and Testimony of Michael Eskra.

with respect to this loss. (*Id*.) He did not attend any of the site inspections or numerous joint lab examinations in this matter. (*Id*.)

2. Instead, he conducted an undocumented secret unilateral inspection of select battery cells using an unquantified and untested methodology to claim a Makita battery cells was a probable cause of the fire—assuming it was in the area of origin selected by Hackett.[2] (*See generally* Eskra No. 1).

3. Eskra could point to no defect in the cell that caused or contributed to cause the fire and had no knowledge or information of its history of use, if any. Instead, based on limited review of missing x-rays he identified cells that appeared to belong to a Makita product and then had four of them subject to CT scans. Thereafter, using no known methodology, let alone one that was peer reviewed, scientific, or repeatable, Eskra declared one of the cells as the cause of the fire.

4. Without meaningful analysis, an expert's opinion is merely *ipse dixit*, which the Court must exclude. *Wendler & Ezra, P.C., v. Am. Int's Grp., Inc.*, 521 F.3d 790, 791 (7th Cir. 2008) ("We have said over and over that an expert's *ipse dixit* is inadmissible. 'An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process.'") (quoting *Mid-State Fertilizer Co., v. Exchange National Bank,* 877 F.2d 1333, 1339 (7th Cir. 1989)).

5. Courts do not allow such unqualified and unscientific opinions to be presented to the trier of facts as they are irrelevant, prejudicial and run the risk of confusing the jury. *See Metavante Corp., v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir.2010) ("Rule 702 does require, however, that the expert explain the 'methodologies and principles' that support his opinion; he cannot simply assert a 'bottom line'"). To be admissible, and expert's ultimate opinion

---

[2] Throughout the three depositions taken in this matter, Eskra has seesawed between the battery cell at issue being a "probable" cause and a "possible" cause. (Eskra 1, p. _____). Under NFPA 921, if an opinion can only reach a certainty level of "possible" cause, the cause is to be ruled undetermined. (NFPA 19.7.4)

"must be grounded in the scientific process and may not be merely … unsupported conjecture" designed to advance a cause. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir.2009).

6. Eskra's professed "methodology" has not been subject to any testing or peer-review and is well outside the generally accepted method for reaching a scientifically valid and supportable conclusion. (Eskra I, pp. 29, 33, 40-41, 44, 52, 59, 66, 68, 152). Eskra admits his methodology is not "provable and repeatable". (Eskra II, p. 29).

7. Eskra's opinions fail to meet any of the reliability factors and are merely "unjustifiably extrapolated from an accepted premise" and a failure to "account for obvious alternative explanations." *Gopalratnam*, No 13-CV-618-PP, 2017 WL 1067768, at *8-9 (E.D. Wis. Marc. 21, 2017), *aff'd*, 877 F.3d 771 (7th Cir. 2017) (*quoting Fuesting v. Zimmer, Inc.*, 421 F.3d 528 (7th Cir. 2005)).

8. The burden is on the expert and the party proffering the expert to "explain the methodologies and principles supporting the opinion." *Minix v. Canarecci*, 597 F.3d 824, 835 (7th Cir. 2010). Here, it is undisputed that no such methodology exists and that the "principles supporting the opinion" are woefully inadequate or nonexistent. Thus, as to the four factors used in determining the soundness of the methodology under *Daubert*, Plaintiff is unable to satisfy its burden. *Daubert*, 509 U.S. at 594-95.

9. The Court cannot simply take an expert's word for a specific proposition in an effort to advance the Plaintiff's case. *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert"). To be admissible, an expert's ultimate opinion "must be grounded in the scientific process and may not be merely .

. . unsupported conjecture" designed to advance a cause. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir.2009).

10. When an expert offers the court only a "bottom line," and no means by which to adjudge its validity as an opinion in contrast to a differing opinion, as in this case, the expert has offered "nothing of value to the judicial process." *McMahon v. Bunn–O–Matic Corp.*, 150 F.3d 651 at 658 (7th Cir.1998). ("No engineer would put such an unsupported assertion in a scholarly article ... Why then should courts pay it any heed?").

11. For these reasons and as further described in Defendants' Brief in Support, Eskra's opinions are irrelevant and must be stricken as they will not "assist the trier of fact to understand the evidence or to determine a fact in issue." *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir.2007).

12. Defendants incorporate herein by reference their Brief in Support of their Motion to Strike the Unsupported & Unscientific Opinions and Testimony of Michael Eskra and all exhibits attached thereto as if set forth fully herein.

WHEREFORE, Defendants Makita USA, Inc. and Makita Corporation of America respectfully request this Honorable Court enter an order granting their Motion to Strike the Opinions and Testimony of Michael Eskra, and for such other and further relief the Court deems just.

Respectfully Submitted,

STANTON | BARTON LLC

By:   */s/ Jonathan T. Barton*
      Jonathan T. Barton, *Admitted PHV*
      Megan M. Ratelle, *Admitted PHV*

8000 Maryland Avenue | Suite 450
St. Louis | Missouri | 63105
(314) 455-6500
jbarton@stantonbarton.com
mratelle@stantonbarton.com

*Attorneys for Defendant Makita Corporation of America and Makita U.S.A., Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been filed with the Clerk of the Court using the CM/ECF system on this 4th day of October 2023. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

*/s/ Jonathan T. Barton*