UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| *AMERICAN HOME ASSURANCE COMPANY,* )<br>*as subrogee of FOREST RIVER, INC.,* )<br>　　　　　　　　　　　　　　　　　　　　) <br>　　　　　　Plaintiffs, 　　　　　　　　) <br>　　　　　　　　　　　　　　　　　　　　) <br>　　v.　　　　　　　　　　　　　　　　　) <br>　　　　　　　　　　　　　　　　　　　　) <br>*MAKITA CORPORATION OF AMERICA, and* )<br>*MAKITA U.S.A., INC.,* 　　　　　　　　) <br>　　　　　　　　　　　　　　　　　　　　) <br>　　　　　　Defendants. 　　　　　　　　) | Case No. 3:21-cv-00252-JD-MGG |

### DEFENDANTS' REPLY BRIEF IN SUPPORT OF ITS MOTION TO STRIKE OPINIONS AND TESTIMONY OF FRED HACKETT

COME NOW, Defendants Makita Corporation of American and Makita, U.S.A., Inc., (hereinafter collectively "Makita" or "Defendants"), by and through their counsel Stanton | Barton LLC, and pursuant to Rule 702 of the Federal Rule of Evidence and *Daubert v. Merrell Dow Pharmaceuticals*, 509 US. 579 (1993) and its progeny and, in compliance with N.D. Ind. L.R. 7-1 and this Court's Order [Doc. 68 and 75], hereby submits its Reply Brief in Support of its Motion to Strike the Opinions and Testimony of Fred Hackett, [Doc. 76] ("Hackett") and, in opposition to Plaintiff's Response thereto [Doc. 82], hereby states as follows:

### I.　　ARGUMENT

Defendants' motion does not represent a difference of opinion based upon the review of the facts and evidence. Instead, Defendant's motion asks whether willful ignorance and the election to ignore the truth when it is adverse to a retained expert's litigation goals and that of his client satisfy Rule 702. If so, then there are virtually no instances in which an expert's opinion, no matter how misguided and devoid of factual support, will be excluded. Those who would benefit from such representations would be free to reach whatever conclusions they want by

1

ignoring evidence and shunning the scientific method. Rule 702 was enacted to prevent such abuses and elevate the Courts to a forum where the truth is discovered, not ignored.

Hackett's analysis of the March 18, 2019 fire fails to abide by the standards governing fire investigation under NFPA 921 or satisfy any Rule 702 criteria. An investigation cannot be made proper simply by repeatedly claiming it is, as Plaintiff does in its Brief in Support of Plaintiff's Response in Opposition to Defendants' Motion to Strike Opinions and Testimony of Fred Hackett [Doc. 83], (hereinafter "Response"[1]) or by dismissing the data gathered by a legitimate fire investigation. Proffered must abide by the fire investigation requirements set forth under NFPA 921 when investigating the origin of a fire—including obtaining and evaluating the information possessed by eyewitnesses prior to forming opinions and other such reliable information.[2] (Hackett, pp. 242, 295-296). Experts cannot rely on expectation bias, erroneous assumptions and willful ignorance to support a clients cast and expect their testimony will be admitted under Rule 702. Hackett's lack of investigation and decision to ignore any evidence that stands in the way of the subrogation target renders his opinions inadmissible under Rule 702.

### A. Ignoring Contradictory Evidence Does Not Comply with the Investigation Requirements Under NFPA 921.

"Courts throughout the country, including [the Northern District of Indiana], have recognized that NFPA 921 offers a comprehensive, peer-reviewed, and detailed guide for fire investigation, and have held that its methodology is reliable for purposes of Rule 702." (*United States v. Thomas*, No. 3:18-CR-45 JD, 2022 WL 36098, at *9 (N.D. Ind. Jan. 3, 2022) (internal

---

[1] Unless otherwise stated, all exhibits herein are attached to Defendant's Brief in Support of its Motion to Strike Opinions and Testimony of Fred Hackett [Doc. 82] and uses the same designations as set forth in the index [Doc. 83-1].
[2] NFPA 921 is the standard utilized by those in the field of fire investigation to govern their investigation into a fire, including defining an area of origin. (Hackett deposition testimony (hereinafter "Hackett"), p. 291:03 to 291:05). Yet, Hackett failed to abide by this standard when he failed to take eyewitness testimony into consideration as part of his origin and cause analysis. (Exhibit 133, NFPA 921 § 18.1.2; Exhibit 136, NFPA 921 § 18.3.3.15).

citation omitted). Plaintiff argues Hackett's incomplete analysis was merely a "deviation" from the standard used by fire investigators. (Response, p. 10). While NFPA 921 allows limited deviations from the procedures outlined under the standard, it mandates that such deviations "need to be justified." (*See* Plaintiff's Exhibit G [Doc. 83-26], NFPA 921, §1.3 Application). Hackett fails to provide any such justification for "deviating" by ignoring adverse evidence and the eyewitness accounts of where the fire started or why such a "deviation" would be necessary and appropriate when investigating this fire. A deviation to support litigation goals is not proper under NFPA 921 or any legitimate fire science investigation.

Plaintiff also suggests that it is mere coincidence that the eyewitness accounts which contradicted Hackett's area of origin were dismissed or not considered. (*See generally* Response, pp. 13-25). Hackett did not and could not consider where the six eyewitnesses had placed the fire[3] because he did not interview all of them and, according to his billing records, did not possess their deposition transcripts until after he wrote his report.[4] (Hackett, pp. 354-355; Exhibit 130F [Doc. 77-8], December 2022 Invoice). Instead, Hackett and Plaintiff capitalize on a factual error in the testimony of **one witness** who placed the fire on top of boxes in an area where no boxes were located to claim the criticism of his investigation is a mere difference of interpretation of testimony. (Exhibit A [Doc. 77-22], Deposition Transcript of Larry Schaffer (hereinafter "Shaffer"), p. 33; Response, p. 3). Plaintiff's reliance on this factual error—which is refuted by the testimony, the video of the fire and the post fire investigation—calls into question their intellectual honesty. (Shaffer, p. 30; Exhibit F [Doc. 77-28], Deposition Transcript of Gary Horton (hereinafter "Horton"), pp. 24-27; Exhibit G [Doc. 77-29], Deposition Transcript of Adam Zimmer (hereinafter

---

[3] As admitted by Plaintiff in its brief, each of the six eyewitnesses to the fire specifically saw fire *outside* the tool crib. (*See* Response, pp. 3-4).
[4] Effforts to obtain Hackett's corrected invoices proved illusive as he delayed and then failed to provide the records showing that the depositions were received and reviewed prior to his report.

"Zimmer"), pp. 35-38; Exhibit H [Doc. 77-30], Deposition Transcript of Brandon Tanner (hereinafter "Tanner"), pp. 25-27; Exhibit I [Doc. 77-31], Deposition Transcript of David Whisler (hereinafter "Whisler"), pp. 43-45; Exhibit J [Doc. 77-32], Deposition Transcript of Derek Null (hereinafter "Null"), pp. 43-47; Exhibit 235 [Doc. 77-21], Johnson Tool Crib Plan View Hypothetical; Exhibit 13, Still Image of Exhibit 20 – Video;). It is not a matter of interpretation that concerns Defendant or violates Rule 702—Instead it is the desire to mislead by generating confusing based on misleading statements for economic gain.

Plaintiff attempts to reframe Makita's argument by claiming the criticism is that Hackett failed to consider the testimony consistent with Makita's "*interpretation*"[5] is belied by the facts. (Response p. 13; *see also* Shaffer, p. 30; Horton, pp. 24-27; Zimmer, pp. 35-38; Tanner, pp. 25-27; Whisler, pp. 43-45; Null, pp. 43-47). The location where the fire was first observed by a witness is not an "interpretation" but a fact to be considered—as is the size of the fire at the time the witness observed it. Such testimony is not "interpreted" but instead considered and evaluated by legitimate fire investigators. When those facts and the facts of other witnesses confirm the "hypothesis" formed by Hackett is incorrect, legitimate fire science technics mandate that the hypothesis (or opinion) change—not that the investigator ignore the evidence.

> **Q. Now, if the witness testimony, if there's multiple people that actually observe where a fire starts, if all of them observe the fire in generally the same area, is that important as a fire investigator?**
> **A. It's a fairly reliable indication of potentially wherever origin is or a compartment of origin or what's transpiring. You have to take that into consideration.**

(Hackett, p. 43).

> **Q. Why are eyewitness accounts early in a fire very important to an investigation?**
> **A. They help define the area of origin, for starters.**

---

[5] For some of the sworn testimony on which Makita's "interpretation" is based, see Shaffer, p. 30; Horton, pp. 24-27; Zimmer, pp. 35-38; Tanner, pp. 25-27; Whisler, pp. 43-45; and Null, pp. 43-47.

(Exhibit D [Doc. 77-26], Deposition Transcript of Tim Johnson (hereinafter "Johnson"), pp. 27-28).

What makes Hackett's incomplete investigation and opinions inadmissible under Rule 702 is that he *failed* to consider the testimony of all witnesses as a whole—whatever his "interpretation" of what they say and where they saw it. Without such analysis, his opinions are little more than litigation constructs designed to justify subrogation. Indeed, Hackett admitted excluding testimony that did not support his area of origin. (Hackett, pp. 265-266). It is this specific cherry-picking of testimony which exemplifies Hackett's lack of investigation and one of the many reasons for the Court to exclude his opinion under Rule 702.

Plaintiff argues that disregarding eyewitness testimony is not a basis for striking expert opinion and cites *Citizens Ins. Co. of the Midwest v. LG Elecs. USA, Inc.*, No. 3:11-CV-40-RLY-WGH, 2012 WL 3294962 (S.D. Ind. Aug. 10, 2012). However, in *Citizens* the expert in question had access to additional forms of data not available to Hackett (e.g. drywall alcove surrounding the product in question's impact on damage, the degree of damage to the product, degree of damage to frozen goods within the product, etc.) and the *only* eyewitness claimed to see the fire well past its early stages, when it was venting out the back of the house. *Id*. at *6. Further, the eyewitness testimony was inconsistent with the scene. In our case, six eyewitnesses—as opposed to one as in *Citizen*—placed the fire outside the tool crib. Here, Hackett eventually became aware of all eyewitness testimony and evidence contradicting the conclusions he drew for his client the day after the fire. Hackett's refusal to collect and consider unfavorable eyewitness testimony prior to forming his opinions renders his methodology unreliable and inadmissible under Rule 702.

### *i.   Hackett Relied on a Mistake of Fact in the Testimony of Larry Shaffer.*

Larry Shaffer was the first eyewitness to see the fire and testified it was "probably about a foot, two foot" tall and on top of cardboard boxes outside the tool crib. (Shaffer, pp. 30, 35). Shaffer mistakenly thought the boxes were outside the tool crib just south of its entrance. *Id.* at 31-32. The boxes were actually north of the tool crib door in the area where Tanner, Whistler, Zimmer, Horton and Null observed the fire. (Exhibit 235 [Doc. 77-21], Johnson Tool Crib Plan View Hypothetical). Fortunately, we do not have to rely solely on the testimony of the five eyewitnesses, as the video taken on the day of the fire shows there were no boxes south of the tool crib door and, of course, when we processed the scene, we found the remnants of the contents of the boxes north of the tool crib door. (Exhibit 13, Video Still Image; Exhibit N, Deposition Testimony of John Reagan, p. 186). Why Hackett would focus on a mistake of fact and flawed memory of one witness while ignoring the other witnessed and physical evidence is unclear. Certainly, it is his choice to use such an easily disproved mistake to his advantage. However, the question to this Court is whether such tactics rise to the level of admissible expert opinion.

Although Defendant evaluated Scheffer's testimony at length Plaintiff criticizes Defendant for "minimally recit[ing] any of Mr. Shaffer's testimony in its brief." (Response, p. 14; *See also* Defendants' Brief in Support of Its Motion to Strike Opinions and Testimony of Fred Hackett [Doc. 77] (hereinafter "Makita's Brief"), pp. 15-17, 23 (evaluating Shaffer's testimony)). On the contrary, Defendant points out that Shaffer saw the fire on some boxes outside the tool crib containing tape, glue and brake cleaner. (Shaffer, p. 35). A considerable amount of time was spent pointing out Hackett's effort to exploit Shaffer's mistake and faulty memory. An intellectually honest investigator would evaluate the images showing the exterior of the tool crib

and note the absence of boxes, then review the totality of the eyewitness testimony and the physical evidence at the scene to confirm the actual location of the boxes.

Plaintiff attempts to reconcile Hackett's disregard for unfavorable eyewitness testimony with a proper fire investigation under NFPA 921, to no avail. By choosing to cherry-pick (and misstate) eyewitness testimony Hackett can sow confusion and disregard the requirements of a proper fire investigation under NFPA 921. *Barber v. United Airlines, Inc.*, 17 F. App'x 433, 437 (7th Cir. 2001). ("Because in formulating his opinion [the expert] cherry-picked the facts he considered to render an expert opinion, the district court correctly barred his testimony because such a selective use of facts fails to satisfy the scientific method and *Daubert,* and it thus fails to "assist the trier of fact." Fed.R.Civ.Proc. 702."). Such "opinion" testimony is unfit for the jury and must be barred through the Court's gatekeeping function.

> **Q.   And so that's sort of what we talked about early on in your deposition; cherry picking and ignoring testimony. You can't do that as a fire investigator using the scientific method, can you?**
> **A.   Correct.**

(Hackett, p. 303:07 to 303:11).

### B.   The Physical Evidence is Consistent with and Supports the Location Where the Eyewitnesses Observed the Initiation of the Fire.

Plaintiff argues that the weight Hackett places (or fails to place) on burn patterns, witness information, and his evaluation of the physical damage should have no bearing on the validity of his investigation and therefore the admissibility of his opinions. (Response, p. 12). Plaintiff claims a jury should be left to fend for itself and analyze whether Hackett's decision not to investigate what the eyewitnesses saw, mischaracterize the evidence, rely on errors and ignore any fact that contradicts his opinion goes to the weight. (*Id*.). Such arguments miss the point of Defendant's Motion to Strike and the requirements of Rule 702. (*See generally* Defendants' Motion to Strike

Opinions and Testimony of Fred Hackett [Doc. 76]). It is not that Hackett places too little weight on the testimony and evidence that contradicts his conclusion—it is that Hackett chose not to investigate the scene before reaching his conclusion and then chose not to obtain statements of eyewitnesses and other critical information necessary to form a legitimate fire science opinion. (Hackett, pp. 209-210; 299; 355). Anyone can walk into a fire scene and select an area of origin without conducting an investigation. (Hackett, p. 355). Such testimony will be of no benefit to the trier of fact as it is the product of expectation bias and designed to advance subrogation despite the actual evidence. (Hackett, pp. 302-303). Legitimate fire investigations collect all of the data and analyze it before reaching their conclusions, not after. (Hackett, pp. 295-296).

After suit was filed based on Hackett's opinion's he became aware of what the eyewitnesses to the fire saw and then proceeded to ignore or dismiss them because they contradicted his opinions. Favoring his predetermined area of origin despite the facts and evidence is indicative of expectation bias.

> **Q.   Now, expectation bias is – what is expectation bias? What is your understanding of it?**
> **A.   It's just exactly what it says. It's an expectation. You've got a preconceived notion before you get started in your investigation or your analysis that it's X.**

(Hackett, p. 302:06 to 302:11).

### C. Hackett Should be Barred from Parroting the Uninformed and Inadmissible *Ipsi Dixit* Opinion of Michael Eska.

Because Hackett is not a battery expert, he should be prohibited from offering any opinion on causation related to battery or battery cells. Plaintiff attempts to argue that experts are permitted to rely on another's expertise and adopt the latter's opinions as their own. While one element of an expert's analysis may rely on the foundational opinions of another expert, experts are expected to have specialized knowledge or skills in rendering their opinions on a topic—such as causation.

*Huey v. UPS*, 165 F.3d 1084, 1087 (7th Cir. 1999) ("Expertise is a necessary but not a sufficient condition of admissibility under Rule 702."). While admittedly having no expertise on the topic of batteries, Hackett could only present a baseless and confusing opinion to a trier of fact. (Hackett, p. 182). This should be prohibited.

When assessing reliability, the Court must "determine whether the expert is qualified in the relevant field and [ ] examine the methodology the expert has used in reaching his conclusions." *United States v. Thomas*, No. 3:18-CR-45 JD, 2022 WL 36098, at *6 (N.D. Ind. Jan. 3, 2022) (internal citation omitted). Where an expert cannot offer insight into his ultimate opinion, such opinion is not helpful to a jury and is inadmissible. *Smith v. Nexus RVs, LLC*, 472 F. Supp. 3d 470, 480 (N.D. Ind. 2020) ("In short, it's one thing to appreciate that a principle exists; it's quite another to do one's homework and apply the principle reliably to a case to enable an opinion in federal court and to guide a jury to answer the question in dispute."); (*see also Mid-State Fertilizer Co. v. Exchange National Bank*, 877 F.2d 1333, 1339 (7th Cir. 1989) ("An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process.").

Plaintiff argues that his expert should be permitted to "base an opinion in part on what a different expert believes on the basis of expert knowledge not possessed by the first expert…" *Dura Auto. Sys. Of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 613 (7th Cir. 2002). Makita agrees. However, Hackett is not endeavoring to formulate his opinion in part on what Eskra believes—Hackett is without any knowledge of batteries and his complete opinion of causation is merely pointing to what Eskra has determined to be true and claiming "me too." Such an "opinion" is neither what the caselaw supports nor will it be helpful to a jury in understanding the facts of this case. For the sake of clarifying any confusion with the Court, Makita does argue that Hackett is unqualified to render any opinions on causation with respect to lithium-ion batteries in this matter.

As that is the only causation opinion Hackett has presented, that is the only causation opinion Makita is able to address.

WHEREFORE, Defendants Makita USA, Inc. and Makita Corporation of America respectfully request this Honorable Court enter an order granting their Motion to Strike the Opinions and Testimony of Fred Hackett pursuant to Rule 702, and for such other and further relief the Court deems just.

Respectfully Submitted,

STANTON | BARTON LLC

By: */s/ Jonathan T. Barton*
Jonathan T. Barton, *Admitted PHV*
Megan M. Ratelle, *Admitted PHV*
8000 Maryland Avenue | Suite 450
St. Louis | Missouri | 63105
(314) 455-6500
jbarton@stantonbarton.com
mratelle@stantonbarton.com

*Attorneys for Defendant Makita Corporation of America and Makita U.S.A., Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been filed with the Clerk of the Court using the CM/ECF system on this 13th day of December 2023. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

*/s/ Jonathan T. Barton*